# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Chapter 11 |
| JRX TUNING & PERFORMANCE, LLC, | § | |
| | § | Case No. 22-40404-MXM11 |
| Debtor. | § | (Subchapter V) |

## DECLARATION OF JUSTIN ANDREW RUCKMAN
## IN SUPPORT OF CHAPTER 11 PETITION AND EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL

I, JUSTIN ANDREW RUCKMAN, declare as follows:

1. I am the managing member of JRX Tuning & Performance, LLC ("Debtor"). Debtor was formed in 2018 as an auto repair shop in Haslet, Texas. Specifically, Debtor offers services to measure and optimize the force, torque and power of automobiles. Debtor's client base includes car dealerships whereby Debtor provides certain automotive services for the dealers' inventory. Individual customers also utilize Debtor's services for their own individual automotive needs.

### I.     Facts Leading up to the Subchapter V Bankruptcy Filing

2. The impact of the global COVID-19 epidemic and its unintended economic consequences, such as supply chain delays and shortages, have detrimentally impacted Debtor's ability to source the necessary materials for its business. Additionally, inflation has caused the price of products routinely utilized by Debtor in its business to significantly increase over the past year. Debtor struggled to maintain its working capital requirements as it waited for parts to complete repairs for its clients.

3. Debtor borrowed funds to maintain its working capital needs from the following working capital lenders ("Merchant Lenders"):

      a.      Capytal.com;

      b.      CFG Merchant Solutions LLC;

      c.      Delta Bridge Funding LLC;

      d.      EBF Holdings, LLC; and

      e.      Spark Funding, LLC.

4.      The Merchant Lenders may have secured their working capital security interests in Debtor's accounts receivable. Debtor also obtained unsecured loans from various other lenders to maintain its working capital needs.

5.      However, the periodic payments of these loans from Debtor's working capital made it impossible for Debtor to meet its financial obligations as they came due. Accordingly, Debtor is seeking bankruptcy protection. Debtor intends to reorganize and pay creditors through a confirmable plan.

## II.    Necessity of Cash Collateral

6.      Debtor receives its income ("<u>Income</u>") from servicing customers by providing automotive repairs. As stated above, it is Debtor's position that the Merchant Lenders may have liens against its cash or Income and one asset-based lender[1] may have liens against equipment used in the ordinary course of Debtor's business. A proposed budget for the next 90 days is attached hereto and incorporated herein as **Exhibit "A"**.

7.      Debtor's primary operating cash requirements include the usual and customary costs and expenses associated with operating an auto repair business. Among other things, Debtor requires use of cash collateral to pay its commercial lease, fund payroll, pay utilities and pay ordinary course vendors.

---

[1] Ascentium Capital, LLC

8. Debtor believes that the use of its Income to maintain its business as a going concern is critical as Debtor has no other sufficient source of funding at this time.

9. Debtor will demonstrate to this Court that to continue the proper operations and management of Debtor's business, it is necessary that Debtor be authorized to utilize the Income in a manner substantially consistent with Debtor's normal and necessary operating expenses.

10. As adequate protection for the use of the Income, Debtor proposes to offer to alleged secured creditors the following:

   (a)   a continuing lien or interest, if any, in the property of Debtor to the same extent as the liens or interests existed pre-petition; and

   (b)   a continuing lien and security interest in any post-petition proceeds and products of Debtor's property to the same extent as they existed pre-petition (the "Continuing Liens"); provided however, that such Continuing Liens shall (i) continue to be perfected and enforceable as they existed pre-petition without the necessity of further actions, and (ii) shall be subject to (a) the fees and expenses of the Office of the United States Trustee and the Clerk of the United States Bankruptcy Court for the Northern District of Texas (collectively, the "Trustee Fees"), and (b) the actual fees and expenses incurred by Debtor from all court-approved professionals retained in this case;

   (c)   the fees and expenses incurred by the Subchapter V trustee; and

   (d)   Debtor shall only utilize the Income from its operations for normal and necessary expenses as set forth in the budget.

11. If Debtor is not authorized to use cash collateral, it will suffer irreparable harm and be forced to cease its operations as it will be unable to pay rent, its employees, or purchase tools and products to service its customers.

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: March 2, 2022               /s/    *Justin Andrew Ruckman*
                                          Justin Andrew Ruckman